| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

Shari McGuire,

    Plaintiff,

v.

A2Z Holdings, Inc. and ADX Labs, Inc.

    Defendants.

Court File No. _____

**RECEIVED**

JUN 11 2019

JACKSON LEWIS P.C.
MINNESOTA

**SUMMONS**

---

THIS SUMMONS IS DIRECTED TO DEFENDANT A2Z HOLDINGS, INC.:

1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons a **written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

    BAILLON THOME JOZWIAK & WANTA LLP
    100 South Fifth Street, Suite 1200
    Minneapolis, MN 55402

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get

1



legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: June 11, 2019

_____
Joni M. Thome
Bar No. 232087
Cassie C. Navarro
Bar No. 396376
*Attorneys for Plaintiff*
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: (612) 252-3570
Fax: (612) 252-3571
jthome@baillonthome.com
cnavarro@baillonthome.com

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                                    FOURTH JUDICIAL DISTRICT

---

Shari McGuire,                                        Court File No. _____

    Plaintiff,

v.                                                    SUMMONS

A2Z Holdings, Inc. and ADX Labs, Inc.

    Defendants.

*RECEIVED JUN 1 1 2019 JACKSON LEWIS P.C. MINNESOTA*

---

THIS SUMMONS IS DIRECTED TO DEFENDANT ADX LABS, INC.:

1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons a **written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

   BAILLON THOME JOZWIAK & WANTA LLP
   100 South Fifth Street, Suite 1200
   Minneapolis, MN 55402

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get

legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: June 11, 2019

_____
Joni M. Thome
Bar No. 232087
Cassie C. Navarro
Bar No. 396376
*Attorneys for Plaintiff*
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: (612) 252-3570
Fax: (612) 252-3571
jthome@baillonthome.com
cnavarro@baillonthome.com

RECEIVED
JUN 11 2019
JACKSON LEWIS P.C.
MINNESOTA

| STATE OF MINNESOTA | DISTRICT COURT |
|---|---|
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

Shari McGuire,

    Plaintiff,

v.

A2Z Holdings, Inc. and ADX Labs, Inc.

    Defendants.

Court File No. _____

**COMPLAINT AND JURY DEMAND**

The Plaintiff, Shari McGuire, for her Complaint against Defendants, states and alleges as follows:

## PARTIES, JURISDICTION & VENUE

1. Plaintiff, Shari McGuire, is a natural person who resides in the City of Maple Grove, County of Hennepin, State of Minnesota.

2. Defendant A2Z Holdings, Inc. ("Defendant A2Z") is a Delaware corporation licensed and conducting business in the State of Minnesota.

3. Defendant ADX Labs, Inc. is a Minnesota corporation, registered and conducting business in the State of Minnesota. Defendant A2Z Holdings, Inc. and Defendant ADX Labs, Inc. are collectively referred to herein as "Defendants."

4. Defendants share a common owner, Steve Renner.

5. At all times relevant to this action, Plaintiff and Defendants were "employee" and "employer," respectively, within the meaning of Minn. Stat. § 363A.03, Minn. Stat. § 181.931, and 29 U.S.C. §§ 203 and 206.

6. The acts alleged in this Complaint fall within the general subject matter jurisdiction of this Court.

7. The court has personal jurisdiction over the parties because Plaintiff maintains a residence in Minnesota, Defendants maintains its principal place of business in Minnesota, and the events giving rise to this action occurred in Minnesota.

8. Venue is proper in the County of Hennepin, State of Minnesota, pursuant to Minn. Stat. § 542.09. Defendant A2Z's principal place of business is in the County of Hennepin, State of Minnesota, Plaintiff worked for Defendants in the County of Hennepin, State of Minnesota, and the unlawful acts alleged herein occurred in the County of Hennepin, State of Minnesota.

## FACTS

9. Plaintiff began working for Defendants in May 2016 as a project manager.

10. Plaintiff joined Defendant with an extensive background of over 25 years in IT program management and business development.

11. Plaintiff's day-to-day responsibilities at Defendants included establishing, directing, and overseeing the Program Management Office ("PMO") to ensure IT programs and projects met the organization's goal sand requirements, and developing and implementing PMO processes, tools, and policies, including project management software, standardized reporting across all projects, and a combined project/product roadmap for the board of directors.

12. Plaintiff also developed new business partnerships and strategic alliances, and worked on a variety of marketing related matters, including developing marketing strategies for Defendants' various business endeavors.

13. Plaintiff exceled in her role and quickly proved herself to be an asset to the companies.

14. The list of Plaintiff's accomplishments during her employment is extensive, but some of the more notable achievements include leading the launch of a mobile application building

software, MobileSoft, and creating accompanying marketing content, facilitating strategic planning for MobileSoft, and launching one of Defendant A2Z's most promising endeavors, MyMy Music.

15. Plaintiff was an exemplary employee and was frequently willing to go above and beyond the call of her primary job responsibilities.

16. As a testament to her value to the company, in January 2018, Plaintiff entered into a Shareholder Agreement with Defendant A2Z, SongVille, Inc. (later rebranded to MyMy Music), and ten other employees of Defendants.

17. Pursuant to the Shareholder Agreement, Plaintiff was issued 5,000 shares of Voting Common Stock of Songville, Inc.

18. At the time, Defendants led Plaintiff to believe that all parties to the Shareholder Agreement received an equal distribution of shares.

19. While Plaintiff enjoyed the work she did for Defendants, she couldn't help but notice Defendants maintained a culture that favored men over women.

20. Of the approximately 20 customer service representatives at Defendants, only two were women.

21. In the fall of 2018, Plaintiff realized the gender discrimination extended to the companies' compensation of their employees.

22. In early September 2018, Plaintiff's supervisor and Defendant A2Z CEO, Joseph Morris ("Morris"), sent Plaintiff a spreadsheet to help facilitate her work on the MyMy Music investor deck and business plan.

23. Among other financial information, the spreadsheet contained the salaries for Plaintiff, her male counterpart, Shawn Pouliotte ("Pouliotte"), and other MyMy Music employees.

24. Plaintiff was shocked to learn Pouliotte earned $212,500, which was over $100,000 more than her, despite the fact the two performed equal work on jobs that required equal skill, effort and responsibility.

25. Indeed, Plaintiff and Pouliotte were responsible for perforing the same job duties for Defendants' various business ventures. These included:

    a. Documenting business requirements;

    b. Providing project and product management;

    c. Developing new business partnerships, strategic alliances, and vendor relationships;

    d. Creating presentations for third parties and investor decks;

    e. Driving strategic planning process and the business' long-term strategic development plans;

    f. Creating revenue projections;

    g. Collaborating on legal agreements;

    h. Performing social media marketing;

    i. Securing external funding;

    j. Finding celebrity brand endorsers;

    k. Creating and executing public relations and marketing strategies;

    l. Designing, creating, and delivering marketing programs, brand messages and awareness, and overseeing advertising, events, and public relationships; and

    m. Overseeing remote development teams.

26.     While Pouliotte only performed these job duties for one venture—MyMy Music—Plaintiff performed them for MobileSoft and two of Defendant ADX's ventures, all while continuing to contribute to MyMy Music.

27.     Both Plaintiff and Pouliotte performed some of their job duties remotely. Both traveled to meet with Defendants' development team in Houston, Texas, and to participate in marketing and business development related activities at SXSW Conference and Festival in Austin, Texas.

28.     Finally, both Plaintiff and Pouliotte reported to the same supervisor—Joseph Morris—who assigned their work, rated their performances, and set their compensation.

29.     On or about September 19, 2018, Plaintiff reported the pay disparity between she and Pouliotte to HR representative Juliette Alciati ("Alciati"). Plaintiff explained how she had become aware of Pouliotte's salary and described how it was significantly above her own even though the two performed similar jobs and multiple common tasks.

30.     Alciati appeared unsurprised and confided that women across all of Defendants' affiliates were significantly underpaid compared to their male counterparts. Alciati described how certain men in management had a prejudice against women rising the ranks and implied that bias had resulted in unfair compensation among many of Defendants' affiliated entities.

31.     Alciati also disclosed that Defendants failed to increase her compensation when she transitioned from a receptionist to performing human resources responsibilities.

32.     Alciati committed to discussing an equalization of the salaries with the company's attorneys and told Plaintiff that she would update her on the outcome.

33.     Shortly after her report to Alciati, Plaintiff's coworker, Jason Brown ("Brown") disclosed to Plaintiff that Morris told him he was "building a case against [her]." Brown suggested

to Plaintiff that she lie low for a while, implying that if she raised her complaints again, Morris would terminate her employment.

34. Plaintiff also observed Defendants revoking some of her job duties, which raised concern for Plaintiff that Defendants were planning to terminate her.

35. On October 23, 2018, Plaintiff followed up with Alciati regarding the status of Alciati's discussions with Defendants' attorneys regarding the salary equalization.

36. Alciati informed Plaintiff that Defendants' attorneys determined the equalization was not worth pursuing at that time because they allegedly had far more important matters to work on and couldn't be bothered to address the pay disparities.

37. Plaintiff was disappointed and humiliated but feared escalating her complaints further because she knew Morris was already upset with her and planning for her termination.

38. Around this same time, Plaintiff learned that contrary to her prior understanding, Defendants had issued 480,000 shares of Voting Common Stock in SongVille, which meant that some employees were issued a greater number of shares than Plaintiff. Thus, the disparity in compensation between Plaintiff and Pouliotte was potentially even greater than she previously understood.

39. Plaintiff was out of the office on vacation from October 26 until November 4, 2018.

40. On November 9, Morris met with Plaintiff and terminated her employment. He reasoned Defendants were making budget cuts.

41. Despite the alleged budget cuts, Morris proposed Plaintiff consider applying for a lower level job with Defendants.

42. While Plaintiff was discouraged by the proposition, she nonetheless pursued the opportunity with another manager, Richard Cant, that same day.

43. On November 14, 2018, Alciati informed Plaintiff she was not selected for the position and Defendants were proceeding with her termination.

## COUNT I
## GENDER/SEX DISCRIMINATION IN VIOLATION
## OF THE MINNESOTA HUMAN RIGHTS ACT

Plaintiff re-alleges all preceding paragraphs of this Complaint.

44. Defendants, through their managers and officials acting on their behalf and within the scope of their employment, engaged in unlawful employment practices involving Plaintiff in violation of the MHRA, Minn. Stat. § 363A.01 *et seq*. These practices include, but are not limited to, discriminating against Plaintiff with respect to compensation, benefits, terms, conditions, facilities and privileges of employment because of her sex in violation of Minn. Stat. 363A.08 subd. 2 (3).

45. Defendants discriminated against Plaintiff in terms of wages, benefits and promotions by paying different wages to employees of opposite sexes for equal work on jobs requiring equal skill, effort and responsibility and by terminating Plaintiff because of her sex.

46. Defendants failed to take all reasonable steps to prevent discrimination based on Plaintiff's sex from occurring.

47. Plaintiff's sex was a motivating factor in Defendants' adverse employment actions against Plaintiff.

48. Defendants' discriminatory conduct has deprived Plaintiff of equal employment opportunities and otherwise adversely affected her status and compensation as an employee.

49. The unlawful employment practices complained above were intentional and were performed by Defendants with malice or reckless indifference to the MHRA, which protects Plaintiff.

50. As a direct and proximate result of Defendants' illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT II
## VIOLATION OF THE EQUAL PAY ACT

Plaintiff re-alleges all preceding paragraphs of this Complaint.

51. 29 U.S.C. § 206(d)(1) prohibits employers from paying different wages to employees of the opposite sex for equal work on jobs the performance of which requires "equal skill, effort, and responsibility," and which are "performed under similar working conditions."

52. Defendants paid different and lesser compensation to Plaintiff than to her male peer despite the fact that the two performed equal work requiring equal skills, effort, and responsibility, which was performed under similar working conditions.

53. Defendants' conduct was willful under 29 U.S.C. § 255 because Defendants knew about disparate compensation between men and women throughout its organizations—including between Plaintiff and Pouliotte—and failed to remedy the discrimination.

54. As a direct and proximate result of Defendants' illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT III
## REPRISAL IN VIOLATION
## OF THE MINNESOTA HUMAN RIGHTS ACT

Plaintiff re-alleges all preceding paragraphs of this Complaint.

55. Defendants, through their managers and officials acting on their behalf and within the scope of their employment, engaged in unlawful employment practices involving Plaintiff in violation of the MHRA, Minn. Stat. § 363A.01 *et seq*. These practices include, but are not limited to, engaging in retaliatory conduct because of Plaintiff's good faith reports of and opposition to Defendants' sexually discriminatory employment practices.

56. Defendants failed to take all reasonable steps to prevent retaliation based on Plaintiff's reports from occurring.

57. Plaintiff's reports of discrimination and pay inequities were a motivating factor in her adverse treatment. Defendants; retaliatory acts include failing to equalize Plaintiff's compensation with her male counterpart and terminating her employment.

58. Defendants' retaliatory conduct has deprived Plaintiff of equal employment opportunities and otherwise adversely affected her status and compensation as an employee.

59. The unlawful employment practices complained above were intentional and were performed by Defendants with malice or reckless indifference to the MHRA, which protects Plaintiff.

60. As a direct and proximate result of Defendants' illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT IV
## RETALIATION IN VIOLATION OF THE
## OF THE MINNESOTA WHISTLEBLOWER ACT

Plaintiff re-alleges all preceding paragraphs of this Complaint.

61. The Minnesota Whistleblower Act ("MWA") states that "[a]n employer shall not discharge ... an employee ... because the employee ... in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law ...." Minn. Stat. § 181.932.

62. Plaintiff made protected reports to Alciati about Defendants; illegal behavior, including reporting discriminatory pay between she and her male counterpart, which is a violation of the Equal Pay Act, 29 U.S.C. § 206(d).

63. Defendants, by and through their managers and officials acting on their behalf, violated the MWA by retaliatorily terminating Plaintiff and failing to equalize her compensation with her male counterpart.

64. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer economic harm, emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits, and other serious damages.

65. Minnesota law provides that an employee injured by a violation of the MWA may recover all damages recoverable at law, including reasonable attorneys' fees and punitive damages. Minn. Stat. § 181.935(a).

66. Because of Defendants' violation of the MWA, Plaintiff is entitled to the relief provided by statute.

## PRAYER FOR RELIEF

Therefore, Plaintiff requests that judgment be entered against Defendants for the following:

    a.    Declaring that Defendants' acts or omissions described in this Complaint constitute violations of applicable federal and state laws which protect Plaintiff;

    b.    Enjoining Defendants and their employees, officers, directors, agents, successors, assignees, affiliates, merged or acquired predecessors, parent or controlling entities, subsidiaries and all other persons acting in concert or participation with them, from their unlawful acts;

    c.    Requiring Defendants to make Plaintiff whole for their adverse, retaliatory, and discriminatory actions with compensatory damages and with interest of an appropriate inflation factor;

    d.    Awarding Plaintiff treble damages pursuant to the Minnesota Human Rights Act;

    e.    Awarding Plaintiff liquidated damages pursuant to the Equal Pay Act;

    f.    Awarding Plaintiff attorneys' fees, costs, and disbursements pursuant to statute; and

    g.    Granting other and further relief as the Court deems fair and equitable.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS.

Dated: June  11, 2019

_____
Joni M. Thome
Bar No. 232087
Cassie C. Navarro
Bar No. 396376
*Attorneys for Plaintiff*
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: (612) 252-3570
Fax: (612) 252-3571
jthome@baillonthome.com
cnavarro@baillonthome.com

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. § 549.211 to the party against whom the allegations in this pleading are asserted.

Dated: June  11, 2019

_____
Cassie C. Navarro

12